IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM I. KISNER,                          )
                Plaintiff,          )
                                 )
           v.                              )          Civil Action No. 07-0788
                                 )          Judge Donetta W. Ambrose
PETER R. DEFAZIO; WILLIAM P.     )          Magistrate Judge Lisa Pupo Lenihan
MULLEN; JOSEPH A. RIZZO, DENNIS )          Doc. Nos. 119, 121, 125, 126, 127, 128
SKOSNIK, MICHELLE TERRY, JOHN    )
A. KEARNEY and ALLEGHENY         )
COUNTY, PENNSYLVANIA             )
                Defendants.         )

**<u>REPORT AND RECOMMENDATION</u>**

## I. <u>RECOMMENDATION</u>

It is respectfully recommended that the Defendants' Motions for Summary Judgment be denied, with the exceptions that their requests for summary judgment be granted (a) pursuant to the applicable statute of limitations, as to alleged acts of retaliation or discrimination occurring prior to June 8, 2005 (which Plaintiff does not contest); and (b) pursuant to the intra-corporate conspiracy doctrine, as to § 1985 claims alleged against the individual Defendants in their official capacities.  The Court recognizes merit in Defendants' observations regarding the (a)

numerous factual allegations extraneous to Plaintiff's legal claims; (b) proffered alternative grounds and motivations for Defendants' challenged actions; and (c) extent of damages reasonably attributable to conspiracy and retaliation in violation of Plaintiff's rights as alleged, as suggested by the evidence of record.  It is, however, persuaded that Plaintiff has raised material questions of fact sufficient to maintain his claims for violation of Constitutionally-protected rights in the face of Defendants' Motions for Summary Judgment.  Accordingly, absent the parties' resolution of those claims, informed by their extensive discovery and the Court's review, the case should proceed to trial.

## II.  STATEMENT OF FACTS AND RECENT PROCEDURAL HISTORY

As set forth in this Court's September, 2008 Report and Recommendation on Defendants' Motions to Dismiss, this is an action brought by Plaintiff William I. Kisner ("Kisner") against Defendants for alleged civil rights violations during his employment in the Allegheny County Sheriff's Office.

Plaintiff  has been employed as a Deputy in the Allegheny County Sheriff's Office for more than fifteen (15) years, during the tenures of Defendants DeFazio (Sheriff, prior to and into 2006) and Mullen (Sheriff, 2006 to present).[1]  He alleges that:

---

1.  In Spring, 2006, Defendant Mullen was appointed Chief Deputy, replacing Skosnik. Following DeFazio's resignation shortly thereafter, Mullen assumed the position of Sheriff, and Defendant Rizzo assumed the position of Chief Deputy. Defendants Terry and Kearney are Lieutenants, and the latter is in charge of the Investigation Division.  See generally Concise Statement of Facts in Support of Motion to Dismiss (Docket #42).

(1)  He repeatedly spoke out against systems of involuntary political contributions and favoritisms (a "pay to play" system in which he refused to participate),[2] racial discrimination, and retaliation against other African-Americans who spoke out about Department injustices (*e.g.*, Lieutenant Yvonne Evans ("Evans"), who was discharged);

(2)  During 2005, he cooperated in the Federal Bureau of Investigation's criminal investigation of Sheriff DeFazio and then-Chief Deputy Skosnik, who pleaded guilty to federal criminal charges related to unlawful political-patronage practices. Plaintiff testified both before the federal grand jury and during the criminal trial of Frank Schiralli, a former Captain in the Sheriff's Office.

(3) At about the same time, he testified before the Allegheny County Personnel Board on behalf of Evans, who was contesting her termination.

Plaintiff alleges that the Defendants conspired to retaliate against him for his testimony in the Criminal and Evans proceedings and his "other speech and expressive conduct alleged", *i.e.*, for his attempts to enforce the rights of himself and others to Constitutional equal protection. See Second Amended Complaint at p. 10.  He alleges specific disfavorable employment treatment related to pretextual-investigations,[3] assignments/promotion,[4] discipline,[5] and other

---

2.  The quid-pro-quo favoritisms allegedly given in exchange for, *e.g.*, financial contributions to election campaigns, included: preferential shifts and shift assignments/locations, overtime, training opportunities, and promotions.  See Second Amended Complaint.

3.  The investigations alleged to have been pretextual include Plaintiff's (a) failure to obtain a "gas card" for use on an overnight prisoner-pickup trip to Rochester, New York and an unauthorized gas transaction; (b) other prisoner transportation assignments; (c) unauthorized parking in the County garage; (d) unauthorized use of a County vehicle on a private-duty detail at the Marriott hotel; (e) compliance with state laws in, and supervision of, his off-duty details; (f) work absences; (g) leaving a prisoner with a Court official; and (h) bouncing a personal

(continued...)

conditions of employment through 2006, 2007 and 2008.  And he alleges personal animus

_____

3.  (...continued)
check.  <u>See</u> Second Amended Complaint.

4.  Plaintiff asserts that he was not considered or selected for promotion owing to his discipline record, which was itself the result of pretextual investigations and unconstitutional retaliation. He also asserts that -  in retaliation for his protected speech/conduct - he was (a) not assigned to federal details; (b) denied opportunities for training; (c) reprimanded or otherwise punished for conduct permitted of others, including late arrival or early departure, absence during work hours, or use of County property/personnel for personal matters; and (d) constructively discharged because Defendants' conduct - including frequent pretextual investigations and retaliatory reprimands - rendered his employment intolerable.  <u>See</u> Second Amended Complaint; <u>but cf.</u> <i>supra</i> n. 2.

5.  Prior to his criminal investigation testimony against alleged pay-to-play corruption in the Sheriff's Office, and  his testimony against alleged racial discrimination in the Sheriff's Office and in favor of Evans, Plaintiff's discipline record consisted of "walking off the job" in June, 1998, being late for work in September, 1998, and sick leave abuse warnings in January, 2000 and November, 2001.  <u>See</u> Brief in Support of Motion for Summary Judgment of Kearney, Terry, Rizzo and DeFazio ("BSMSJ of DeFazio Defendants") at 3 n. 3.  He asserts that since that time he has become the most frequently disciplined employee, and been subject to an extraordinary pattern of investigation and discipline.  <u>See</u>, <i>e.g.</i>, Plaintiff's Brief in Opposition at 10-11.

   But compare BSMSJ of DeFazio Defendants at 17-18 (noting absence of evidence that others who cooperated in criminal investigation/prosecution were subject to retaliation) <u>with</u> Plaintiff's Brief in Opposition at 18 (suggesting, in noting presence of factual questions, that some individuals who cooperated denied knowledge of any corruption/political favoritism and that Kisner's criminal trial testimony may have been more adverse than others).

   <u>Cf.</u> Mullen's Memorandum of Law In Support of Motion for Summary Judgment ("Mullen's MLSMSJ") at 16 (noting that no current Sheriff's Office employee supported Plaintiff's assertion that he was held to different scrutiny or "treated unfairly or discriminately");  <u>id.</u> at 17 (noting that since Mullen was hired in 2006, the Sheriff's Office had "recorded over 115 disciplinary incidents involving at least 70 other Sheriff's Office employees", <i>i.e.</i>, an average of slightly more than 1.5 incidents per disciplined employee during a three-year period); Mullen's Reply in Support at 8 (indicating that this discipline of others supports summary judgment) (citing <u>Ferace</u>, 2007 WL 2823477 at *6 (holding "fact that other similarly situated employees were also terminated . . . was evidence that the employer would have terminated the plaintiff")).  The Report cannot accept <u>Ferace</u> as analogous in light of Plaintiff's allegations and evidence.

4

related to his resistance to "unlawful and discriminatory practices", including racism, within the Sheriff's Office.  Id. at 11.

On the above bases, Plaintiff brought this action in federal court with claims of  (1) retaliation by Defendants for Constitutionally-protected speech, in violation of 42 U.S.C. § 1983; (2) conspiracy by Defendants to retaliate against him for his speech and for "otherwise [seeking] to enforce the right of himself and others . . . to the equal protection of the law by voicing his objections to the pay-to-play and racial discrimination within the [Sheriff's] Office" in violation of 42 U.S.C. § 1985; and (3) supervisory liability against Defendants Mullen and Allegheny County for failure to prevent or aid in preventing the conspiracy, in violation of § 1986.

Defendant Allegheny County filed its Motion for Summary Judgment in March of this year (Docket #119), as did Defendant Mullen (Docket #121) and other Defendants (Docket # 125 to 128).[6]


III.  **STANDARD ON SUMMARY JUDGMENT**

Summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  See Anderson v. Liberty

_____

6.  Defendant Skosnik, believed to be presently incarcerated,  is not represented by counsel and has not filed a Motion.

Lobby, Inc., 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party.  Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  However, the nonmoving party may be subject to summary judgment under Rule 56 if, after adequate time for discovery, it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[7]

The Report emphasizes that the applicable standard is *not* whether this Court would find, on the weight of the evidence as a whole, that Plaintiff sustained substantial injury, or even if *it* would find that Defendants had conspired to, *e.g.*, retaliate against Plaintiff for protected speech.  Rather, it is whether the evidence is so lacking that no reasonable jury could find in Plaintiff's favor on his claims.[8]

---

7.  See also Anderson, 477 U.S. at 251-252 (indicating that, distilled to its essence, the summary judgment standard requires the nonmoving party to create a "sufficient disagreement to require submission [of the evidence] to a jury").

8.  Cf.  Boulware v. Battaglia, 344 F.Supp. 889, 893 (D.C. Del. 1972), *aff'd* 478 F.2d 1398 (3d Cir. 1983) (discussing appropriate degree of caution in considering summary judgment in federal constitutional claims); Reilly v. City of Atlantic City, 532 F.3d 216, 232 (3d Cir. 2008); Skrutski v. Marut, 2006 WL 801528, *2 (M.D. Pa. Mar. 29, 2006).  Cf. also BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.1992) ("Credibility determinations are the province of the factfinder, not the district court.").

**IV.  ANALYSIS**

**A.  42 U.S.C. § 1983**

    **1.  Elements of Claim**

    Plaintiff brings a claim under 42 U.S.C. § 1983 [9] for free speech-based retaliation,[10] which will require a reasonable jury to conclude that he has proffered sufficient evidence that (a) he engaged in constitutionally-protected conduct/speech on matters of public concern, (b) he suffered an adverse employment action, and (c) any protected conduct/speech "was a substantial or motivating factor in any alleged retaliation." See Mullen's MLSMSJ at 7 (citing Matsey v. Westmoreland County, 185 F.App'x 126, 132 (3d Cir. 2006)).  This then shifts the burden to the defendant to show that the action would have been taken absent the protected conduct.  See Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006).  Defendant Mullen asserts that Plaintiff has failed to meet his burden as to each element of this claim.[11]  The Court disagrees.

    **(a)  Protected Speech**

    As noted above, Plaintiff alleges specific adverse employment-related treatment/conditions in retaliation for his cooperation with authorities in criminal investigation of

---

9.  Section 1983 does not itself confer substantive rights, but provides a remedy for redress when a Constitutionally-protected right has been violated under the color of state law.  See Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

10.  Although Mullen raises the question of whether Plaintiff is belatedly raising a § 1983 Fourteenth Amendment equal protection violation as well, Plaintiff has responded that he is not.  See Mullen's MLSMSJ at 27-30; Plaintiff's Brief in Opposition at 13.

11.  The other Defendants have adopted/incorporated by reference Mullen's arguments in support of his Motion for Summary Judgment.  See BSMSJ of DeFazio Defendants at 1.

the Sheriff's Department under DeFazio and related prosecution, and testimony in support of

Evans' challenge to her employment termination (as also discriminatory and/or retaliatory).  And

he has introduced evidence of his Constitutionally-protected speech.  See, e.g., Garcetti v.

Ceballos, 547 U.S. 410 (2006) (holding that First Amendment protects government employee's

speech when he speaks (1) in the capacity of a citizen, as opposed to within the discharge of his

employment duties, and (2) on an issue of public concern); Reilly v. City of Atlantic City, 532

F.3d 216 (3d Cir. 2008) (concluding that police officer's court testimony regarding department

corruption was protected speech).[12]

As was recommended in the September 2008 Report, and held by the Court in its

December 2008 Memorandum Order, to the extent Defendant Mullen attempts to limit the

speech on which Plaintiff may base a § 1983 claim against him to speech made during and/or

about Mullen's tenure as Sheriff, he errs.[13]  An unconstitutional deprivation may have been

---

12.  The Court observes that Plaintiff's exclusively internal complaints of the use of, e.g., sirens and lights during NFL football-related events may be, as Mullen alleges, unprotected as "personal grievance" or "pursuant to official duties" speech, as reflected in Miller v. Clinton County, 544 F.3d 542 (3d Cir. 2008) and Sigsworth v. City of Aurora, 487 F.3d 506 (7th Cir. 2007), respectively.  See Mullen's MLSMSJ at 8-11.  But see Garcetti, 547 U.S. at 420-21 (explaining that fact that views were expressed only intra-office was not dispositive); id. (looking to whether expressions at issue were made "as part of what [plaintiff] was employed to do"); DeLuzio v. Monroe County, 271 Fed.Appx. 193, 196 (3d Cir. 2008) (noting that speech was protected where plaintiff did not have professional responsibility or "official duties," over topics and "superiors' problems . . . stemmed precisely from his frequent and unwelcome comments on matters that [they] felt were not within [plaintiff's] purview"). The Report further notes, however, that such speech is not the gravamen of Plaintiff's Complaint.

13.  See Mullen's MLSMSJ at pp. 14-16 (discussing, in context of § 1983 defenses, absence of protected speech during Mullen's Administration).

8

effected by employment-related retaliation for speech against Sheriff's Department's unconstitutional practices prior to Mullen's selection and retention by that Department as well.[14]

### (b) Sufficient Adverse Action

A § 1983 First Amendment claim requires that the plaintiff allege constitutionally protected conduct, and related retaliatory action sufficient to deter a person of ordinary firmness from exercising his rights.  See Thomas v. Independence Township, 463 F.3d 285, 291 (3d Cir. 20006).  As Defendants correctly observe, "criticism, false accusations or verbal reprimands" have been held to fall short of actionable retaliation under § 1983.  Mullen's MLSMSJ at 11-12; BSMSJ of DeFazio Defendants at 23 (quoting Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)).  See generally McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (holding that effect of alleged conduct on freedom of speech "need not be great in order to be actionable, but it must be more than *de minimus*").

In the case *sub judice*, Plaintiff evidences not only that he was (i) held to different standards, criticized, and subjected to multiple investigations; and (ii)  given a formal reprimand

---

14.  Cf. September 2008 Report (noting, "in response to Defendant Mullen's assertion that Plaintiff failed 'to establish that . . . Mullen was plausibly motivated by Plaintiff's speech against the DeFazio administration', that Plaintiff had alleged Mullen's appointment by DeFazio, Mullen's relationship to the Sheriff's Department (the institution, and the individuals comprising it, including the other Defendants), and conduct and complicity in conduct in a factually-specific context sufficient to meet the applicable standard").  Plaintiff specifically avers that Mullen (a) ignored Plaintiff's complaint that the gas card investigation and discipline in June, 2006 were retaliatory, declining to investigate; (b) ignored Plaintiff's repeated complaints in August, 2006 and warned Plaintiff against making a federal civil rights claim; and (c) conspired in additional retaliatory investigations and discipline of Plaintiff during 2006, 2007 and 2008.  See Second Amended Complaint at 64; Plaintiff's Brief in Opposition at 6 & n.4. Compare Mullen's Reply in Support at 5 ("[T]he undisputed evidence is that Mullen did not investigate Kisner's allegations of retaliation because all of the discipline comes across his desk and there was nothing at all to suggest retaliation.") (citing Mullen's Deposition Testimony).

for the "gas card" incident in August, 2006 and again with regard to another overnight on-duty security assignment in January, 2008; but also, specifically, that he was (iii) given written reprimands, including findings of dishonesty, and subjected to other retaliatory discipline, including suspensions.  See Second Amended Complaint, Plaintiff's Brief in Opposition at 7; see also Mullen's MLSMSJ at 13 (noting that Plaintiff received a one-day suspension for leaving a prisoner with tipstaff and a five-day suspension for continuing to work an off-duty detail for which Mullen had withdrawn his approval).  A reasonable jury could find that, particularly in the aggregate, the employment-related conduct alleged was sufficiently adverse under § 1983.[15]

### (c)  Motivating Factor

Defendants cite to the Third Circuit's decision in Lauren v. DeFlaminis, 480 F.3d 259, 266 (3d Cir. 2007) in support of their argument that no reasonable jury could find that retaliation was a substantial or motivating factor in their adverse treatment of Plaintiff.  As they observe, to show causation under Lauren, Plaintiff must show: (i) an unusually suggestive temporal proximity between the protected activity and the alleged retaliation, or (ii) a pattern of antagonism, coupled with timing, or (iii) evidence gleaned from the record as a whole and from which a reasonable factfinder could infer causation.  See Mullen's MLSMSJ at 113-14 (citing Lauren at 267).  See also Farrell v. Planters Lifesavers Co. 206 F.3d 271, 281 (3d Cir. 2000) ("It

---

15.  See, e.g., Barry v. Luzerne County, 447 F.Supp.2d 438, 451 (M.D. Pa. Aug. 9, 2006) (concluding that suspensions with pay could be deemed sufficient to support § 1983 claim) (citing McKee); Robinson v. Southeastern Pennsylvania Transp. Authority, 982 F.2d 892, 896 (3d Cir. 1993) (discussing "round of [pretextual] disciplinary actions", including writing exaggerating plaintiff's misconduct and evidence suggestive of heightened or over-eager discipline, as supporting trial judge's finding of retaliation for objections to race discrimination). Cf. MFS, Inc. v. Dilazaro, 2009 WL 3081569, 7 (E.D.Pa.) (E.D.Pa.,2009) ("The Supreme Court has held that an act as trivial as failing to hold a birthday party constituted an adverse action.") (citing Rutan v. Republican Party, 497 U.S. 62, 76 n. 8 (1990)).

is important to emphasize that it is causation, not temporal proximity [or evidence of antagonism], that is an element of plaintiff's prima facie case, and temporal proximity [or antagonism] merely provides an evidentiary basis from which an inference can be drawn.")

Mullen protests that Plaintiff cannot identify any "temporal proximity" or "antagonistic conduct" on Mullen's part to link the alleged retaliatory acts (such as the May, 2006 gas station investigation) to Plaintiff's earlier testimony adverse to the Sheriff's Office,[16] and other Defendants similarly assert that Plaintiff has failed to offer evidence of retaliatory conduct.[17] The Court agrees that the evidence of record does not appear to suggest an unusual temporal proximity. Plaintiff has proffered evidence, however, of what might reasonably be considered related "antagonism" and, in light of the record as a whole, has raised material fact questions

---

16. See Mullen's MLSMSJ at 14; see also id. at 8 (asserting that Kisner "cannot establish a causal link between his protected speech . . . and any alleged acts of retaliation after Mullen was hired").

17. For example, Defendant Kearney asserts, in this context, that Plaintiff was "never . . . under his command", that he was "just doing what [he] was told", and that all the facts reported in his investigation(s) of Plaintiff were true. See BSMSJ of DeFazio Defendants at 8-12. Defendant Rizzo also states that he was "passing orders [along] chain of command." See id. at 16. And Defendant DeFazio pleads that "[w]ith the exception of the May, 2006 incident, [he] played no role whatsoever in an adverse action taken against [Plaintiff] and, indeed, there is no evidence that he participated in the May, 2006 investigation or made the decision to transfer or reprimand Kisner." See id. at 21.

As identified in Plaintiff's responsive pleadings, he has evidenced some material fact questions regarding each Defendant's conduct. See, e.g., Plaintiff's Response to Motions for Summary Judgment of DeFazio Defendants (discussing fact questions regarding (1) Kearney's control of assignments to football-related details; participation in pretextual investigations; solicitation of false testimony from Plaintiff's partner, Burkus; and influence on Mullen; (2) Rizzo's participation in pretextual investigations; (3) DeFazio's assigning subordinate to investigate Plaintiff's off-duty business following his testimony on Evans' behalf, and his consultation with Mullen regarding gas card incident; and (4) Terry's differential treatment of Plaintiff/selective enforcement of work rules and participation in pretextual investigations).

from which a reasonable jury could infer causation.[18]  Therefore, the matter is appropriately  left

to the jury.  See Farrell, 206 F.3d at 280-281 ("Although timing and ongoing antagonism have

often been the basis for the causal link, our case law clearly has allowed a plaintiff to

substantiate a causal connection for purposes of the *prima facie* case through other types of

circumstantial evidence that support the inference."); Reilly, 532 F.3d at 233 (rejecting argument

for summary judgment where reasonable factfinder could infer from evidence that conspiracy to

force officer into retirement related to his adverse testimony in criminal investigation regarding

department corruption ten years prior).

      Some Defendants also protest that, because the decisions were made by Mullen

independently and based on his own judgment/review of the evidence, the role of a subordinate

in initiating or investigating the underlying incident cannot constitute a "substantial or

motivating factor."  BSMSJ of DeFazio Defendants at 20-21 (citing Lakeside-Scott v.

Multnomah County, 2009 WL 331, 460 (9th Cir. 2009).  However, even under the language of

Lakeside-Scott itself, there remains an "intensely factual" determination of whether the

supervisor would have made the adverse employment decision absent (or but for) the

subordinate's retaliatory conduct or influence (*i.e.*, whether there has been a break in causation).

See  Plaintiff's Response to the Motions for Summary Judgment of the DeFazio Defendants at 3

(quoting Lakeside-Scott, 556 F.3d at 801-09). See also Abramson v. William Patterson College

of New Jersey, 260 F.3d 265, 268 (3d Cir.2001) (concluding, in assessing role of subordinate,

---

18.  See, *e.g.*, Plaintiff's Brief in Opposition at 9-10 (discussing alleged pattern of retaliation over time). Cf. Weston v.Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001).

that "it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate").[19]

The Court concurs with Defendants' observations that the existence of reasons for personal animus suggested by Plaintiff himself (*i.e.*, that Kearney resented Plaintiff's economic competition in off-duty services, or that Terry resented Plaintiff's stirring up racial tensions in the Sheriff's Office) provide possible alternative motives for some Defendants' adverse conduct.  So, too, the favoritism that was assertedly part-and-parcel of the pay-to-play corruption may present an alternative ground for disfavorable treatment.  But, at bottom, the question of motive is for the jury.  See, *e.g.* Reilly, 532 F.3d 216 (3d Cir. 2008) (denying summery judgment on basis that discipline was justified and unconnected to protected speech, noting that defendants' position was properly viewed as challenge to factual issues of motivation and rebuttal).

### 2.  Other Grounds for Discipline

In asserting an entitlement to summary judgment on the basis that Mullen "would have disciplined Kisner regardless of the protected speech",[20] the Defendants cite to decisions in support of the proposition that the existence of independent grounds for discipline warrants, in itself, summary judgment in the Defendants' favor.  See Mullen's MLSMSJ at p.19.  But adopting Defendants' position in this case would disregard the instruction of this Circuit's recent

---

19.  Compare BSMSJ of DeFazio Defendants at 22 (assuming, for the jury, that adverse action "was based solely on Sheriff Mullen's . . . independent evaluation" and not in any way on the other Defendants' conduct).

20.  Mullen's MLSMSJ at 7; id. at 20-24 (providing alternate basis for each of 16 alleged adverse employment actions); id. at 24 ("Because Kisner cannot overcome Mullen's legitimate, independent reasons for his decision making, summary judgment must be entered in favor of Mullen in Count I . . . .").

decision in Reilly v. City of Atlantic City, 532 F.3d 216 (3d Cir. 2008). In Reilly, the Third

Circuit expressly concluded that a defendant's establishment of alternative grounds for discipline

would not warrant summary judgment where, as here, the case presented a material fact question

of whether the *severity of discipline imposed* was attributable to retaliation for the plaintiff's

exercise of protected rights.[21]

And although Defendants present a litany of alternative bases for their many instances of

investigation and/or discipline of Plaintiff,[22] under the law of this Circuit and the evidence of

record, there are questions of fact necessarily left to the jury (*e.g.*, whether an investigation itself

and/or the consequences thereof were the result of Defendants' retaliatory motive).[23]

---

21. Cf. BSMSJ of DeFazio Defendants at 12 (asserting entitlement to summary judgment because all of the facts Kearney reported in investigation of Plaintiff were true).

22. See Mullen's MLSMSJ at pp. 20-24. The Court observes that this list appears to include assertions that: (a) Plaintiff's discipline for the gas card matter was particularly warranted because he displayed a bad attitude; (b) Mullen was unaware of, and so blameless regarding, any adverse treatment regarding assignment to hospital security details (but see *supra* n. 13 (asserting that Mullen dismissed out-of-hand Plaintiff's early complaints of retaliatory treatment by officers under Mullen's authority)); (c) investigation of Plaintiff's off-duty detail at the Marriott was warranted because he may have violated rules; (d) investigation of Plaintiff's use of the parking garage was warranted and the reprimand was only verbal; (e) appointment of another individual to the position of Acting Sergeant was appropriate because it was "believed he would do a better job" and he worked in that area; (f) reprimands for leaving a prisoner and passing bad check(s) were warranted; and (g) Plaintiff has made false representations regarding his use of sick leave, call-offs, tardiness, sleeping in a Courtroom, certification for off-duty details, and leaving a prisoner with Court tipstaff. As Plaintiff details in his Brief in Opposition, Mullen asserts some related facts to be uncontested when they are disputed with conflicting evidence. See generally Mullen's 56 page Statement of Undisputed Material Facts; see, *e.g.*, Plaintiff's Brief in Opposition at 2-3, n. 3.

23. Cf. Plaintiff's Brief in Opposition at 11. The Report concurs with Mullen's observation that the question turns not on whether the adverse employment action was "wrong or mistaken" but on the Defendants' motivation. See Mullen's MLSMSJ at 19 (citing Fuentes v. Persky, 32 F.3d 759, 765 (3d Cir. 1994)).

### 3.  Qualified Immunity

In a variation on this theme, Defendant Mullen and other Defendants also assert that they are entitled to summary judgment because they reasonably believed that they were entitled to investigate and/or discipline Plaintiff *for his asserted misconduct* regardless of any protected nature of his conduct/speech, and because their conduct was otherwise constitutionally reasonable.[24]  This analysis begs the fundamental question(s) underlying the claim.

As discussed in the previous Report, the Court assesses entitlement to qualified immunity by considering whether the facts allege a violation of a constitutional right and whether the right was clearly established in light of the specific context of the case.  See Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds, Pearson v. Callahan, 129 S.Ct. 808 (2009).  And, as noted in the September, 2008 Report, any reasonable Sheriff's Department officer/official would be aware that adverse employment treatment/conditions imposed *in retaliation for protected speech in objection/resistance to unlawful and/or discriminatory practices* was unconstitutional. See Report at 8; Assafu v. Fields, 178 F.3d 170 (3d Cir. 1999) (reversing summary judgment for defendants in employee's civil rights action, as reasonable official would know it was unconstitutional to retaliate against plaintiff for exercise of First Amendment right).  Plaintiff has introduced evidence from which a reasonable jury could conclude that adverse conduct alleged occurred and was so motivated.[25]

---

24.  See Mullen's MLSMSJ at 7, 25-26 (citing Wagner v. City of Holyoke, 404 F.3d 504 (1st Cir. 2005) (concluding that the plaintiff's infractions would have permitted a reasonable superior officer to believe that he was entitled to discipline regardless of the content of the speech); BSMSJ of DeFazio Defendants at 22-23.

25.  See Reilly, *supra*; Monteiro v. City of Elizabeth, 436 F.3d 397, 404-05 (3d Cir. 2006)

(continued...)

### 4.  Statute of Limitations Bar to Claims for Acts Prior to June 8, 2005

The DeFazio Defendants also assert that Plaintiff's claims relying on discrete acts occurring more than two years before the filing of his Complaint, *i.e.*, prior to June 8, 2005, are barred by the applicable statutes of limitations.  See BSMSJ of DeFazio Defendants at 24-29 (citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002); O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006)); see also O'Connor, 440 F.3d at 127 (indicating that all First Amendment retaliation claims are always individually actionable).  And as they correctly observe, Plaintiff has not disputed this basis for partial summary judgment.  See DeFazio Defendants' Response to Plaintiff's Brief in Opposition at 11-12; Plaintiff's Brief in Opposition to DeFazio Defendants.  Accordingly, partial summary judgment should be granted to the extent Plaintiff seeks to advance claims for acts occurring prior to June 8, 2005.  These acts cannot be tolled under the continuing violations doctrine.[26]

---

25.  (...continued)
(noting that whether conduct violated clearly established law depended on motivation, and concluding there was a sufficient question to go to the jury); Smith v. Central Dauphin School District, 511 F.Supp.2d 460,480 (M.D.Pa.2007) ("Faced with facts from Plaintiff tending to prove that Defendants' motives were retaliatory and facts from Defendants tending to prove that their motives were pure . . . [t]he decision of which evidence to credit and which to reject properly lies with the jury, not the court on summary judgment"); Thomas v. Independence Township, 463 F.3d 285 (3d Cir.2006) (holding it was a question of fact whether harassment was retaliation for participation in protected activity). Cf. Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995) (noting necessity of factual determinations where nature of conduct is disputed).

26.  The statute of limitations bar applies to violations of 42 U.S.C. §§ 1985 and 1986, as well as § 1983.  See O'Connor, 440 F.3d at 129 (citing Morgan).

Although the Report recommends that discrete acts occurring before June 8, 2005 cannot be used to *sustain* Plaintiff's claims for statute of limitations purposes, it does not address whether these acts can be used as *evidence* of retaliation if they otherwise would qualify as admissible evidence.  See MFS, 2009 WL 3081569 at 10 (same).

**B.  42 U.S.C. § 1985 (2) & (3)**

Defendants also move for summary judgment regarding Plaintiff's claims for

unconstitutional conspiracy under 42 U.S.C. § 1985(2) and (3).  They raise three alternative

bases:

**1.  Absence of Evidence of Agreement**

Defendants err in arguing that they are entitled to summary judgment because Plaintiff

has proffered insufficient evidence of an agreement.  See Mullen's MLSMSJ at 31-32.  Kisner

has made specific allegations of a retaliatory understanding among the Defendants, and direct

evidence of an express agreement is not required.  Rather, a § 1985 conspiracy may also be

proved through circumstantial evidence, and a claim may be maintained where the jury could

infer from the circumstances that the Defendants had a "meeting of the minds.  See Adickes v.

S.H. Kress & Co., 398 U.S. 144, 158 (1970) (looking to circumstantial evidence of conspiratorial

agreement to retaliate); Adams v. Teamsters Local 115, 214 Fed. App'x 167, 172 (3d Cir. 2007);

Starzell v. City of Philadelphia, 553 F.3d 1983, 205 (3d Cir. 2008).[27]  A reasonable jury could

credit Plaintiff's interpretation of the evidence, *i.e.*, that the Defendant officials were conspiring

to punish Plaintiff's perceived disloyalty to the Sheriff's Office (*e.g.*, his opposition to corrupt

---

27.  Cf. Young v. Beard, 2008 WL 2693860 (W.D. Pa. 2008) (concluding that participants
"must share the same general conspiratorial objective" but need not share details of a plan nor
possess the same motives for desiring the intended result); Bell v. City of Milwaukee, 746 F.2d
1205, 1257 (7th Cir. 1984) (finding officer was properly held liable under § 1985 where there
was evidence of his "participation and alignment with" a "cover-up" of a shooting).

and/or discriminatory practices), in the same manner as loyalty was rewarded under the pay-to-play system.[28]

### 2.   Intra-Corporate Conspiracy Doctrine Bar

The Defendants assert that Plaintiff's conspiracy claims are barred by the "intracorporate immunity doctrine."  See Mullen's MLSMSJ at 34.

As Defendants indicate, the intra-agency (or intra-corporate) conspiracy doctrine provides, generally, that "an entity cannot conspire with one who acts as its agent." General Refractories Co. v. Firemans Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (citing Heffernan v. Hunter, 189 F.3d 405, 413 (3d Cir.1999)). And, as they also observe, the theory has been applied to governmental authorities in Pennsylvania.

But while employees *acting as agents* are deemed incapable of conspiring, individual defendants who are employees of a government authority *can* conspire with one another *in their*

---

28.  Although some Defendants attest that they were unaware of Plaintiff's adverse testimony in the investigation and/or criminal prosecution, Plaintiff avers that each Defendant was aware, and that his speaking-out was a matter of common knowledge throughout the Office.  The comparative credibility of these assertions is, of course, for the factfinder.

And although Defendant Mullen identifies Plaintiff's inarticulate deposition testimony that he was "speculating" as to the Defendants' asserted conspiracy, see, *e.g.*, Mullen's Reply in Support at 32-33, a fair reading of that testimony as a whole indicates his belief that the pattern of Defendants' conduct comprises circumstantial evidence from which a conspiracy may reasonably be inferred.  See id. at 33.  Cf., *e.g.*, Gibson v. Superintendent of New Jersey Dept. of Law & Public Safety-Division of State Police, 2009 WL 900854 at *8 (D.N.J.  Mar. 31, 2009) (concluding, where plaintiff identified particular officers, and adduced facts to support that those defendants participated in a pattern of unconstitutionally-motivated misconduct, jury could infer that defendants were part of a conspiracy, and they were not entitled to summary judgment on Plaintiffs' § 1985 claim).

*individual capacities*.  See Lopez v. Maczko, 2007 WL 2461709, **5 -6 (E.D.Pa. Aug. 16, 2007)

(citing Novotny v. Great Am. Fed. Sav. & Loan Assoc., 584 F.2d 1235, 1238 (3d Cir.1978) (en

banc), *vacated on other grounds,* 442 U.S. 366 (1979));[29] Revak v. Lieberum, 2009 WL 1099187

(W.D. Pa. Apr. 23, 2009). [30]

      Plaintiff's § 1985 claim is brought against Mullen and the DeFazio Defendants in their

official and individual capacities. See Second Amended Complaint at 11.[31]   He alleges that these

---

29.  As this Circuit has subsequently observed in its discussion of Novotny,  "the plaintiff's complaint did not allege that the corporate defendant conspired with its officers and directors, but rather that a conspiracy existed between the individual officers. Therefore, the issue was whether concerted actions by officers and employees of a corporation could be the basis of a claim under section 1985(3). [The Third Circuit] held that it could."  Heffernan, 189 F.3d at 412. But cf. United States v. Basroon, 38 Fed. App'x 772, 781 (3d Cir. 2002) ("While the intracorporate conspiracy doctrine has been applied by some courts to civil rights complaints brought pursuant to [§ 1985], this Court has specifically rejected the doctrine, even in the civil context.") (citing Novotny).

30.  Cf. Robison v. Canterbury Vill., Inc., 848 F.2d 424, 430-31 (3d Cir.1988) (holding that conspiracy may exist between a corporation and an officer "if the officer is acting in a personal, as opposed to official, capacity"); Heffernan,189 F.3d at 412 (noting that courts allow an exception to the intracorporate conspiracy doctrine when employees have acted for personal benefit and thus outside course and scope of employment); Componentone, L.L.C. v. Componentart Inc., 2006 WL 3805141, 1 (W.D.Pa.) ("A noted exception to the intracorporate conspiracy doctrine is applicable when the . . . officer, director, or employee. . ., acts for his or her own personal benefit or where their actions exceeded the bounds of their authority.")

    Cf. MFS, Inc. v. Dilazaro 2009 WL 3081569 at13 (noting that under the Restatement (Second) of Agency § 228 conduct of an employee within the scope of employment must be of the kind that s/he is employed to perform and be calculated, at least in part, to serve the employer, and that "an employee acting on behalf of the employer can still exceed the scope of his or her employment"); id. (stating that whether act is done in outrageous or abnormal manner may indicate that employee was not actuated by an intent to perform the employer's business, but was using the opportunity afforded by the circumstances); id. (noting that issue of whether person acted within scope of his or her duties is generally for jury).

31.  Cf. Allegheny County's Brief in Support at 1 ("Count II sets forth a conspiracy cause of action under [§ 1985] against the individual Defendants.  Count III is a 'supervisory liability' claim against Allegheny County based on [§ 1986].").

individual Defendants conspired amongst themselves and that their conspiracy was motivated by

personal interests, including animus stemming from their benefit from the pay-to-play system

which Plaintiff opposed and/or from his opposition to acts of racial discrimination. Thus, while

Defendants are entitled to summary judgment under the intracorporate conspiracy doctrine to the

extent that liability is asserted against them in their official capacities, Plaintiff is entitled to

proceed with his claims against them in their individual capacities. See Rife v. Borough of

Dauphin, 625 F.Supp.2d 212, 221-222, (M.D. Pa. 2008) (concluding that where complaint

alleged conspiracy among individual defendants and did not allege violations under § 1985 by

municipality, intracorporate conspiracy doctrine was inapplicable when individual defendants

were alleged to have been motivated by independent personal stake).[32]

### 3.  Absence of Identifiable Class or Invidious Class-Based Discriminatory Motive

Repeating arguments made and addressed on their Motions to Dismiss, Defendants assert

that these claims cannot be maintained because the statutory provisions do not extend to a class

defined by political affiliation and/or objection to/injury by Defendants' conduct. See, *e.g.*,

Mullen's MLSMSJ at 35-36 (asserting that neither a "state obstruction claim" under § 1985(2)

nor a § 1985(3) claim can be maintained; BSMSJ of DeFazio Defendants at 27-28.[33]

---

32.  In Rife, Plaintiff, a Chief of Police, alleged that the individual defendants insulted and harassed him, subjected him to different employment requirements/standards, undermined his ability to do his job, and that he was ultimately suspended for advocating the hiring of an African-American officer.  See id.

33.  The DeFazio Defendants also assert that Plaintiff has failed to sufficiently evidence a race-based claim.  See BSMSJ of DeFazio Defendants at 29.  The Report disagrees.

As noted in the September, 2008 Report, there are two possible bases for a § 1985(2) claim.  The first portion applies to conspiracies to deter (*e.g.* by intimidation) *or to retaliate against* a party or witness attending or offering testimony in federal court.[34]  The federal nexus in this instance is a federal court proceeding (*i.e.*, Plaintiff's testimony in federal criminal proceedings, but not in Allegheny County proceedings).  The second portion applies to conspiracies intended to impede/obstruct "the due course of justice in any State . . ." with the intent to deny to any citizen the equal protection of the laws, or to injure/retaliate against someone for attempting to enforce rights of equal protection.  Brawer v. Horowitz, 535 F.2d 830 (3d Cir. 1976); Fetzer v. Cambria County Human Services, 384 F.Supp.2d 813,  (W.D. Pa. 2005).  In this instance, the nexus is a "class-based, invidiously discriminatory animus."  Id. Similarly, under § 1985(3) Defendants may be held liable if they conspired for the purpose of depriving any person or class of persons of the equal protection or privileges of the laws and in furtherance thereof injured Plaintiff or deprived him of a right.

Plaintiff has proffered evidence of his participation in a federal proceeding.  In addition, Plaintiff alleges - and introduces evidence in support of - racial, as well as free-speech based, discriminatory animus and retaliatory conditions of employment within/by the Sheriff's Department, both before and after Mullen's appointment.  See, e.g., Second Amended Complaint at pp. 11-17 (alleging racial animus and retaliatory motives for conditions of employment such as assignments, investigation, and discipline). For example, Plaintiff has proffered evidence that (a) both he and Evans expressed concerns regarding racism in the Sheriff's Office; (b) when

---

34.  Compare Mullen's MLSMSJ at 37 (asserting, as to this component, that Kisner "cannot show a federal intimidation claim" and that Mullen eliminated the pay-to-play practice).

Terry objected to the "trouble-making", Plaintiff accused her of selling out the interests of her racial community for self-promotion; (c) all African-Americans were then transferred from the Family Division; (d) Evans, who had been the first female, African-American Lieutenant, was discharged; (e) Terry was grade-skipped to the rank of Lieutenant and placed in Evan's former position;[35] (f) Plaintiff testified in favor of Evans regarding her discharge and racism within the Sheriff's Office; and (g) Plaintiff was thereafter subjected to numerous investigations and disciplinary measures, in marked contrast to his prior employment record.

Because Plaintiff is entitled to proceed on these allegations, "the Court need not now reach the difficult, unresolved question of whether conspiracy to discriminate for purely political reasons is sufficiently 'invidious' in and of itself to give rise to a cause of action under § 1985(3). See Farber v. City of Paterson, 440 F.3d 131, 138-140 (3d Cir. 2006) (discussing the Third Circuit's 'mixed signals' on this question and the split amongst other Circuit Courts; and noting that it is an 'open question' in the Supreme Court)."  Report at 6-7 & n. 5.  Compare Mullen's MLSMSJ at 35-37.

### C.  **42 U.S.C. § 1986**

Plaintiff's claim for supervisory liability against Mullen and Allegheny County requires  a showing that the Defendant (1) had knowledge of a § 1985 conspiracy; (2) had the power, with reasonable diligence, to prevent or aid in preventing a § 1985 violation, and (3) neglected or

---

35.  Cf. BSMSJ of DeFazio Defendants at 24 (asserting, in advocating summary judgment on Plaintiff's § 1983 claim, that all Sergeants promoted before him (naming Kearney, Terry, Fersch and Stehle) had higher test scores or more seniority).

refused to prevent the conspiracy.  It also requires a showing that a wrongful act was committed.
See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994); 42 U.S.C. § 1986.

Defendant Allegheny County is entirely correct when it observes, in the first of its three paragraphs arguing in support of its Motion for Summary Judgment, that liability under § 1986 is derivative of liability under §1985.  See Clark v. Clabaugh, 20 F.3d 1290 (3d Cir. 1994). It errs, however, when it also asserts that it is entitled to summary judgment because (1) as a municipality, it is not a "person" within the scope of § 1986, and/or (2) it had no power, as a matter of law, to direct personnel matters in the Sheriff's Office.  To the contrary, as Plaintiff's Response  explains, (1) the County is a "person" for purposes of this claim;[36] and (2) under the Second Class Code applicable to Allegheny County, Sheriff's Office compensation is paid by the County, and it and its employees are subject to the provisions of accountability, conduct, and ethics of the County's Home Rule charter, as well as the oversight of the Civil Service Commission and the County Personnel Board, and the policies of the County's Department of Human Resources (which expressly prohibit illegal discrimination, harassment and retaliation for reasons of class or the exercise of legal rights/protected speech or conduct).  See Plaintiff's Response to Allegheny County at 5-7 (citing Santiago v. City of Philadelphia, 435 F.Supp. 136, 156 (E.D. Pa. 1977) (concluding that defendant was answerable under § 1986 where it had some authority to control the policies and practices at issue under statute and Home Rule Charter)).

Similarly, Defendant Mullen is  not entitled to summary judgment on this claim where, Mullen's objections to the contrary notwithstanding, Plaintiff has proffered evidence that Mullen was aware of, and/or participating in, a conspiracy, and neglected/declined to investigate

---

36.  See Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978); Clark, 20 F.3d at 1298.

Plaintiff's complaints of retaliation and/or deter further retaliatory conduct by Sheriff's Department employees. See, e.g., supra n. 20.  Cf. Mullen's MLSMSJ at 38 (citing Clark, 20 F.3d at 1292).

### D.  Punitive Damages

Finally, as Defendant Mullen observes, punitive damages are not available for conduct by an Individual Defendant in his official capacity.  See Mullen's MLSMSJ at 38-39 (citing City of Newport, Inc. v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)), but are available where the conduct was undertaken in an individual capacity and reflected "reckless or callous indifference to the federally protected rights of others".  Id. at 39 (quoting Savarese v. Agriss, 883 F.2d 1194, 1203 (3d Cir. 1989)).[37]

While allegations of a retaliatory motive alone are insufficient to support a punitive damages award, Brennan v. Norton, 350 F.3d 399, 429 (3d Cir. 2003), punitive damages may be properly assessed where there is evidence to establish that a defendant acted with "heightened culpability, above and beyond a retaliatory motive".  Eichenlaub v. Township of Indiana, 214 Fed. Appx. 218, 224 (3d Cir. 2007) (discussing Springer, in which Third Circuit "revisited this issue, holding there was sufficient evidence in that First Amendment retaliation case to support a jury's punitive damages award" in presence of "strong circumstantial evidence, such as "unusual" procedures, and by substantiated evidence of the defendant's vindictive 'attitude'

---

37.  The Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). And this Circuit has held that this standard is disjunctive, and thus the defendant's conduct need only be reckless or callous. See Springer v. Henry, 435 F.3d 268, 281 (3d Cir.2006).

towards the plaintiff") (citing <u>Springer</u>, 435 F.3d at 281-82).  <u>See also</u>, <u>DeLuzio v. Monroe County</u>, 271 Fed.Appx. 193, 198 (3d Cir. 2008) (noting that jury could have inferred wrongful intent, or disregard for plaintiff''s right to engage in protected speech, from testimony regarding ongoing hostility, improper negative evaluations, and other conduct).  Accordingly, this claim is best left to the jury and the Court should not grant summary judgment on punitive damages.


## III. <u>CONCLUSION</u>

For the reasons aforesaid, it is respectfully recommended that the Defendants' Motions for Summary Judgment be denied, with the exceptions that their requests for summary judgment be granted (a) pursuant to the applicable statute of limitations, as to alleged acts of retaliation or discrimination occurring prior to June 8, 2005 (which Plaintiff does not contest); and (b) pursuant to the intracorporate conspiracy doctrine, as to § 1985 claims alleged against the individual Defendants in their official capacities. Specifically, it is recommended that Allegheny County's motion at doc. no. 119  denied in its entirety. It is further recommended that the remaining motions be denied in part and granted in part as set forth above.

In accordance with the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing

the objections shall have ten (10) days from the date of service of objections to respond thereto.

Failure to file timely objections may constitute a waiver of any appellate rights.


LISA PUPO LENIHAN

United States Magistrate Judge


Dated: November 4, 2009


cc:      counsel of record

26